UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK LLP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-1197 (APM) |
| v. ) | |
| ) | |
| CONSUMER FINANCIAL ) | |
| PROTECTION BUREAU, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT CONSUMER FINANCIAL PROTECTION BUREAU'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Frank LLP ("Plaintiff") brought this action against the Consumer Financial Protection Bureau ("Bureau"), pursuant to the Freedom of Information Act ("FOIA"), seeking 557 pages of investigational hearing transcripts (i.e., deposition transcript pages) from an investigation that preceded ongoing civil law enforcement proceedings. These records are entirely exempt from disclosure under FOIA Exemption 7(A) because their disclosure could reasonably be expected to interfere with the ongoing enforcement proceedings. Portions of these transcript pages are, in addition, properly withheld under FOIA Exemptions 6, 7(C) and 7(E). These exemptions for portions of these transcript pages protect the personal privacy of individuals implicated in law enforcement proceedings (Exemption 7(C)); the personal privacy of individuals (Exemption 6); and law enforcement techniques (Exemption 7(E)).

Therefore, as the Bureau explained in its opening memorandum, the Court should grant the Bureau's motion for summary judgment (and deny Plaintiff's cross-motion) because all of

the documents in question are properly withheld pursuant to at least one FOIA exemption.

### I.  Summary of Agency Actions and Plaintiff's FOIA Request

The Bureau investigated the debt collection activities of the National Collegiate Student Loan Master Trust and its component trusts ("NCSLT"). NCSLT had relied on affidavits for collection proceedings. During the Bureau's investigation, it obtained one or more affiant witness statements contained in 557 investigative hearing transcript pages. Plaintiff seeks here, through a FOIA request and this litigation, only the investigation transcript pages reflecting the testimony of any one of nine identified affiants.[1] Declaration of Deborah Morris ("Morris Decl."), ECF No. 11-1, ¶¶ 5, 10, 11, and 21-23. As Plaintiff has alleged, it seeks these witness statements to pursue class action claims against NCSLT, Transworld Systems, Inc. ("Transworld"), and a law firm that represented NCSLT in New York state, Forster and Garbus, LLP. Complaint, ECF No. 1, ¶¶ 5-11. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., and in Supp. of Pl.'s Cross-Motion for Summ. J. (ECF Nos. 13 and 14) at 9-14 ("Pl.'s Mem.").

Although the Bureau's law enforcement investigation resulted in the negotiation of two simultaneous settlements, one with NCSLT and the second with NCSLT's national debt servicer, Transworld, law enforcement proceedings nonetheless continue. As the Bureau explained in its opening brief, Def.'s Mem in Supp. of Mot. For Summ. J. (ECF No. 11) ("Def.'s Mem.") at 3-4, the Bureau has been engaged in an ongoing multiparty proceeding concerning the court's acceptance of the proposed settlement since September 2017, *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust*, Civ. A. No. 17-1323 (D. Del.) (the

---

[1] Frank's FOIA request asks for the transcripts, if any, resulting from the administrative investigational hearing testimony of any of nine identified affiants. To protect the privacy of any investigation witness, the Bureau has not identified the name of any affiant who has testified and has not released the number of affiants who testified. See Def.'s Mem in Supp. of Mot. For Summ. J. (ECF No. 11) ("Def.'s Mem."), at 3 n. 2.

"*NCSLT* Action"), Morris Decl. ¶¶ 23 and 24.  This proceeding could be followed by full-blown litigation of the civil law enforcement action against NCSLT and related entities including Transworld.

The Bureau filed a separate civil enforcement action against Forster and Garbus for debt collection activities of that firm including collection on behalf of NCSLT.  *Bureau of Consumer Financial Protection v. Forster and Garbus, LLP*, Civ. A. No. 19-2928 (E.D.N.Y.) (the "*Forster & Garbus* Action"), Morris Decl. ¶ 26.

## II.     The Records at Issue in this Action were Compiled for "Law Enforcement Purposes" under Exemption 7

The Bureau moved for Summary Judgment on whether the disputed records were compiled for law enforcement purposes.  *See* Def.'s Mem § I at 9; Morris Decl. ¶¶ 3-6, and 23-26.  Plaintiff's Opposition and Cross-Motion do not address these facts or the Bureau's argument on the creation of these records for law enforcement proceedings.[2] And, although Plaintiff indicates that these facts are "disputed," it nowhere offers any contradictory evidence or argument.  In these circumstances, this Court should regard the issue as conceded.  *Lewis v. District of Columbia*, 2011 WL 321711 (D.C. Cir. Feb. 2, 2011) at 1 (citing *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)), *aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, United Methodist Church*, 98 F. App'x 8 (D.C. Cir. 2004); *Property of the People, Inc. v. Department of Justice*, ___ F. Supp. 3d ___ n. 8, Civ. A. No. 17-

---

[2]  In Plaintiff's Counter-Statement of Genuine Issues of Fact in Response to Defendant's Local Rule 7(h) Statement, ECF No. 13-1 at 4-5, Frank indicates, without substantive argument, that this issue is contested.

3

1728 (EGS), 2019 WL 4644572 at 12 (D.D.C. Sept. 24, 2019) (same).

### III. Exemption 7(A) Protects these Records from Disclosure during Law Enforcement Proceedings

#### A. These Transcript Pages Relate to Pending Law Enforcement Proceedings

The Bureau's memorandum identifies the pending law enforcement proceedings that relate to these transcript pages. Def.'s Mem. at 3-5 and 9. In response, Plaintiff argues that these transcript pages do not relate to a pending law enforcement proceeding because the Bureau entered a consent order settling an administrative proceeding with Transworld. *In the Matter of: Transworld Systems, Inc.,* Bureau No. 2017-CFPB-0018 ("*Transworld*"). Pl.'s Mem. at 9-12.

The administrative settlement of *Transworld* (which Transworld, as an intervener in the pending *NCSLT* Action, claims cannot be reconciled with the proposed *NCSLT* Action settlement) does not preclude Exemption 7(A)'s application to the withheld transcript pages. Indeed, Exemption 7(A) protects witness statements during ongoing law enforcement proceedings that follow an investigation. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 224, (1978). The Bureau has shown that these witness statements were compiled for the investigation preceding the *NCSLT* Action and relate directly to the allegations in the pending *Forster and Garbus* Action. Def's Mem. at 3-5; Morris Decl. ¶¶ 22-26.

Plaintiff nevertheless argues that these transcript pages cannot be relevant to the ongoing district court litigation in the *NCSLT* Action based on a mischaracterization of the issues in that action as limited to the scope of certain contract rights. Pl.'s Mem. at 10-11. While the NCSLT district court has been considering issues related to contract rights,[3] those issues are irrelevant

---

[3] The NCSLT court addressed contractual rights when it held that contractual relationships provided a sufficient basis for each new party's intervention. Mem. Op. of Oct. 19, 2018, *NCSLT* Action ECF No. 95, 2018 U.S. Dist. LEXIS 179914. Contractual relationships are also relevant to the first phase of the resulting proceeding concerning whether the signatories to the proposed Consent Judgment had authority to enter into the proposed settlement, and whether it

here.  Rather, what is relevant is that unless the proposed settlement is accepted by the court, litigation of the Bureau's law enforcement action will continue.  The NCSLT Action therefore remains an ongoing law enforcement proceeding for purposes of Exemption 7(A).

Exemption 7(A) also properly protects the transcript pages at issue because their disclosure could reasonably be expected to interfere with the pending law enforcement proceeding against the other defendant in Plaintiff's class action lawsuits, the law firm of Forster and Garbus.  *See* Def.'s Mem. at 4-5.  In opposition, Plaintiff cites an order entered by the Eastern District of New York administratively closing the Bureau's law enforcement action which Plaintiff speculates, without basis, indicates that "the CFPB-Forster Action is on the cusp of being resolved via consent order."  Pl.'s Mem. at 11.  Plaintiff is simply mistaken; the *Forster & Garbus* district court essentially stayed the Bureau's action pending developments in a Supreme Court case considering the constitutionality of a provision in the Bureau's organic statute.  *See Seila Law LLC v. Consumer Financial Protection Bureau*, cert. granted, ___ U.S. ___, 2019 WL 5281290, No. 19-7 (Oct. 18, 2019).  The parties in the *Forster and Garbus* Action may bring further developments to the court's attention in April, and that matter also remains a pending law enforcement proceeding for purposes of Exemption 7(A), subject to the foreseeable harms described in the Morris Declaration.  Morris Decl. ¶¶ 21-28.

### B. The Identity of any Witness or Witnesses and the Substance of the Witness Statement or Statements Remain Nonpublic

Plaintiff also asserts without evidence that the contents of these transcript pages are public.  Pl's Mem. at 12-13.  Plaintiff refers repeatedly to the presumed contents of the withheld transcript pages and the identities of those it presumes to have been witnesses.  However, Bureau

---

was proper for those signatories to enter into the settlement.  ECF No. 99 (Nov. 29, 2018 Scheduling Order at 1).

investigative hearings are nonpublic. Morris Decl. ¶¶ 15-20. Plaintiff offers no evidence that these investigational hearing transcripts have been made public but relies instead on rank speculation. *See e.g*. Pl.'s mem. at 13 ("nothing about the Transcripts will come as a surprise to anyone familiar with the CFPB investigations at issue here.") This does not controvert the sworn testimony of a Bureau official that the information is protected by the Bureau and its disclosure could reasonably be expected to interfere with ongoing law enforcement actions. Morris Decl. ¶¶ 5-20, 27, and 28.

Plaintiff similarly presumes to know the identity of the witnesses who allegedly provided these statements on the theory that these identities are widely known. *See id*. ("…it was clear that the underlying evidence had come from the CFPB's interviews of the Affiants.") Once again, Plaintiff cites no evidence that any particular individual actually testified at an investigational hearing. Plaintiff may fairly conclude only that at least one of the nine individuals specified in its FOIA request actually testified, since the Bureau admitted to having responsive records.

As explained in the Bureau's opening memorandum, witness statements such as the testimony reflected in these transcript pages are protected during ongoing law enforcement proceedings by FOIA Exemption 7(A). Def.'s Mem. at 10-14 citing *Robbins*, 437 U.S. at 241. Plaintiff's attempt to distinguish *Robbins* and the other governing authorities cited by the Bureau on the grounds that witness identities and the substance of witness statements are widely known here is not supported by any evidence. The release of these transcript pages would, among other reasonably expected interference, prematurely disclose the government's evidence, prematurely disclose the gaps in the government's evidence, and potentially expose one or more possible witnesses to intimidation. Morris Decl. ¶ 27 and 28. They are, accordingly, properly withheld

pursuant to Exemption 7(A).

### C. Release of Nonpublic Witness Statement Transcript Pages Could Be Reasonably Expected to Interfere with Ongoing Enforcement Proceedings

The Bureau, through the Morris Declaration, has established that the release of *any* witness statement reflected in transcript pages could reasonably be expected to interfere with ongoing enforcement proceedings.  Morris Decl. ¶¶ 21-28.  *See* Def's Mem. at 10-14.  Therefore, the Bureau need not (and cannot) segregate portions of these transcript pages for disclosure.  *See Robbins*, 437 U.S. at 224-25.  Plaintiff's only argument in opposition is its bare assertion that the contents of transcript pages and identities of witnesses are public, but, as explained above, Plaintiff's argument is unsupported by evidence and mistaken.  The Bureau has, accordingly, established that the documents at issue are protected in their entirety by FOIA Exemption 7(A).  The Court need go no further and may grant summary judgment for the Bureau on that basis alone.

### IV. Portions of these Records are Exempt from Disclosure under Exemptions 6 and 7(C) to Protect the Personal Privacy of Individuals

As explained above, the transcripts Plaintiff seeks are properly withheld in full under Exemption 7(A).  In addition, portions of the transcripts are also properly withheld under Exemptions 6 and 7(C) to protect the personal privacy of individuals.  Def.'s Mem. at 14-18.

As the Bureau explained in its opening brief, FOIA protects the "privacy rights [of] suspects, witnesses and investigators" mentioned in law enforcement records.  *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (Upholding the refusal to disclose the names of private individuals in the agency's enforcement investigation files) (quoting *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)).  Accordingly, when "individuals may be named or otherwise identified" in law enforcement records "who have not previously been publicly

implicated in the [matter]" and "there is no 'compelling evidence that the agency is engaged in illegal activity,' such names are "categorically ... exempt from disclosure." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 854 F.3d 675, 681-682 (D.C. Cir. 2017) ("*CREW II*") (quoting *SafeCard*, 926 F.2d at 1206); *see also SafeCard*, 926 F.2d at 1206 (any countervailing public interest must be in the nature of an allegation of illegal government activity in order to overcome an individual's Exemption 7(C) privacy interest).

Plaintiff contends here only that Exemptions 7(C) and 6 do not apply because all personal privacy interests are "diminished" and that there are countervailing public interest considerations to counterbalance any remaining personal privacy interests. Pl.'s Mem. at 15-16. But Plaintiff's argument rests on an overreading and misinterpretation of a single phrase – "otherwise implicated" – taken out of context from *CREW II*. Pl.'s Mem. at 15. In *CREW II* the Court of Appeals painstakingly analyzed the privacy interests of various individuals identified in connection with the criminal investigation of former House of Representatives Majority Leader Tom Delay. The Court of Appeals explained the privacy interests of the narrow class of individuals identified in the records who had already been publicly identified by the government or had testified in court "as having been charged, convicted or otherwise implicated in connection with the public corruption investigation that encompassed Abramoff and DeLay. … [T]hese individuals have a diminished privacy interest in certain information that may be contained in the records at issue, and therefore the categorical rule of non-disclosure announced in *SafeCard* does not apply to them." *Id*. at 681-82. Through this careful analysis of the possible privacy interests of this small group, the Court of Appeals affirmed *SafeCard* with respect to privacy interests protected by Exemption 7(C) while establishing a new narrow category of those "publicly identified" through government releases or trial testimony "as having been charged,

convicted or otherwise [similarly] implicated" in a "criminal public corruption investigation." Only this last group has "a diminished privacy interest." *Id*. at 682. But Plaintiff offers no evidence or authority to the effect that any individuals identified in the withheld transcript pages could be regarded as implicated in a criminal public corruption investigation sufficient for a "diminished privacy interest" under *CREW II*.

Plaintiff also fails to identify a cognizable public interest that might possibly outweigh even a diminished privacy interest. It cites merely the public's general right to know what the government is doing and the purported public benefit resulting from its class action representation. Pl.'s Mem. at 16. Plaintiff attempts to rely on *Aguirre v. SEC*, 551 F. Supp. 2d 33 (D.D.C. 2008), for the proposition that shedding light on an agency investigation is always a sufficient public interest. However, *Aguirre* found a recognized public interest where the findings of an extensive Congressional investigation constituted evidence that a specifically alleged "Government impropriety might have occurred." *Id*. at 56. *Aguirre* therefore held that the privacy interests of the individuals under 7(C) were outweighed by "probative allegations of official misconduct," *id.*, a countervailing interest recognized at least since *SafeCard*. Plaintiff fails to even hint at any germane public interest in these records, let alone an interest sufficient to overcome the privacy interests of the identified individuals.

As the Bureau explained in its memorandum, Def.'s Mem. at 17-18, Exemption 6 likewise protects the names, personal information, and other identifying information pertaining to individuals that is found in the transcripts. The Bureau has thus properly withheld portions of these transcript pages pursuant to Exemption 6 as well as Exemption 7(C) to protect the personal privacy of individuals associated with the Bureau's civil law enforcement investigation.

## V. Exemption 7(E) Protects Portions of these Transcript Pages Reflecting Bureau Law Enforcement Questioning Techniques

As the Bureau explained in detail in its memorandum in support of its motion for summary judgment, Exemption 7(E) protects the investigational hearing transcripts from disclosure because they are records "compiled for law enforcement purposes" whose disclosure "would disclose techniques and procedures for law enforcement investigations and prosecutions." *See* Def.'s Mem. at 18-24. The Bureau's argument is based on 5 U.S.C. § 552(b)(7)(E) and extensive authority from the courts in this circuit including a decision last year in Plaintiff's previous FOIA action against the Bureau concerning transcripts from the Bureau's earlier Portfolio Recovery Associates ("PRA") investigation, *Frank LLP v. CFPB* ("*Frank II*")[4], 327 F. Supp. 3d 179 (D.D.C. 2018) (Friedrich, J.) (Exemption 7(E) protected portions of investigational hearing transcripts from the investigation which preceded the settled Bureau PRA enforcement action).

The body of Plaintiff's Memorandum argues that the Bureau seeks to misapply *Frank II* here because the Bureau released segregable portions of the transcripts in *Frank II* but has not yet released segregable portions of these transcript pages. Plaintiff appears to misunderstand the Bureau's position in this action. As already explained above, the records are protected from disclosure *in their entirety* here by Exemption 7(A) because of the ongoing proceedings. With respect to Exemption 7(E), the Bureau asserts here that, as in *Frank II*, only *portions* of the withheld records disclosing specific law enforcement techniques are also protected by

---

[4] The Bureau's memorandum also discusses an earlier FOIA action also decided in the Bureau's favor with respect to the applicability of Exemption 7(E), *Frank, LLP v. CFPB*, 288 F. Supp. 3d 46, (D.D.C. 2017) (*Frank I*). Def.'s Mem. at 5 n. 3.

Exemption 7(E), just as portions are protected by Exemptions 6 and 7(C).[5]  Def.'s Mem. at 18-22.

### A. The Bureau's Questioning Techniques and Methods are Protected Law Enforcement Techniques and Procedures

As the Bureau explains in its opening memorandum, its techniques for questioning witnesses as part of a law enforcement investigation are "law enforcement techniques" properly protected from disclosure under Exemption 7(E).  *See* Def.'s Mem. at 18-24 and Morris Decl. ¶¶ 36-42.

As an initial matter, Plaintiff has essentially conceded the application of Exemption 7(E) here.  Plaintiff addresses the overall applicability of Exemption 7(E) only in passing in a footnote.  Pl.'s Mem. 17-18 n. 18.  There Plaintiff asserts that it "does not concede" that any portion of these transcript pages might be protected Exemption 7(E), and attempts to distinguish some of the authorities cited by the Bureau.  *Id.*  But it is well-established that a "litigant does not properly raise an issue by addressing it in a 'cursory fashion' with only 'bare-bones arguments.'"  *See Cement Kiln Recycling Coal. v. EPA,* 255 F.3d 855, 869 (D.C. Cir. 2001) (per curiam) (citations & internal quotation marks omitted).  This Court therefore need not address Plaintiff's 7(E) arguments and may consider the issue waived.  *See also United States v. Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997) (Court notes that it does not address an argument raised only in a footnote).

---

[5]  The Bureau has provided the Declaration of Deborah Morris consistent with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), but has not provided a separate index of withholdings in part pursuant to Exemptions 6, 7(C), and 7(E) because the transcripts are withheld in their entirety pursuant to Exemption 7(A).  In addition, any public index of redactions would include limited information to avoid revealing the very information that FOIA protects in these circumstances.  The Bureau stands ready to provide an index of partial redactions made pursuant to Exemptions 6, 7(C), and 7(E) upon the Court's request.

If the Court chooses to consider Plaintiff's brief 7(E) discussion, however, it is unpersuasive.

Plaintiff's Exemption 7(E) footnote principally appears to argue that Exemption 7(E) only applies to "investigative techniques generally unknown to the public," citing *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F.Supp. 851, 857 (D.D.C. 1989)). *Albuquerque Publ'g Co.*, found nothing secretive about the use of very different techniques, "wired informants and 'bugs' secretly placed in rooms" that warranted protection under Exemption 7(E). 726 F.Supp. at 857. Here, the Bureau seeks to withhold not the fact that investigational hearings were conducted, but the contents of those hearings, which would reveal information the Bureau finds relevant in prosecuting potential violations of federal consumer financial laws. While the fact that the Bureau conducts investigational hearings in the course of an investigation is generally known to the public, the specific questions asked, and information sought, are not. *See* Morris Decl. ¶ 36 ("As a result of the previously described restriction on the public disclosure of transcripts of IHs, the details of the questions. . . are not generally known."); *Judicial Watch v. Dep't. of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (Commonly known procedures may be withheld to protect their effectiveness); *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) ("There is no principle of which the Court is aware that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public.").

Plaintiff also attempts to distinguish *Piper v. Dep't. of Justice*, 294 F. Supp. 2d 16 (D.D.C. 2003), arguing that the *Piper* court protected from disclosure "logistical considerations involved in polygraph examinations," and claiming Exemption 7(E) covers only "specialized, hyper-technical investigative procedure[s]." Pl.'s Mem. at 17 n. 18. Of course, the FOIA

contains no such requirement. *See* 5 U.S.C. § 552(b)(7)(E). In any event, the court in *Piper* makes no mention of a polygraph examination being "specialized" or "hyper-technical" (words which do not appear in the court's opinion just as they do not appear in Exemption 7(E)). *See* 294 F. Supp. 2d 16. Moreover, the court protected not only the "logistical considerations" of a polygraph examination but also specifically protected the "questions and answers." *Id*. at 30.

Plaintiff argues that *Rosenberg v. Dep't. of Immigration and Customs Enf.*, 13 F. Supp. 3d 92, 114 (D.D.C. 2014), does not support the Bureau's position because the protected *Rosenberg* questions are a "meticulous blueprint covering every possible question-and-answer eventuality." Pl.'s Mem. at 17-18 n. 18. Here, the transcripts would reveal the actual follow-up questions posed by Bureau investigators, as well as the initial questions and order of questioning. Regardless, the rationale underlying the *Rosenberg* court's decision was that "the redacted questions would disclose what the FBI deems relevant to investigating obstruction of justice cases." 13 F. Supp. 3d at 114. The same rationale applies here where the Bureau is investigating potential violations of specific federal consumer financial protection laws.

And Plaintiff claims *Barouch v. Dep't. of Justice*, 87 F. Supp. 3d 10 (D.D.C. 2015), is "wholly inapposite" because there the FOIA requester-plaintiff did not object to the withholding of questioning techniques used by ATF agents. *See* Pl.'s Mem. at 18 n. 18. Plaintiff is correct that the FOIA requester did not challenge ATF's application of Exemption 7(E); however, Plaintiff wrongly asserts that that was the "only" reason the court protected from release the ATF agents' questioning techniques. While noting the plaintiff's failure to object, the court in *Barouch* still considered and upheld the agency's application of Exemption 7(E): "Still, the Court finds . . . a sufficient basis upon which to conclude that defendants have carried their burden to justify this particular withholding, especially in light of plaintiff's failure to object to

it." 87 F. Supp. 3d at 30 n. 13.

Finally, Plaintiff attempts to distinguish *Allen v. Fed. Bureau of Prisons*, Civ. A. No. 16-0708 (CKK), 2019 WL 498804 (D.D.C. Feb. 8, 2019) by flatly asserting, without any support in the opinion, that the determinative consideration is the complexity of the questions being protected. Plaintiff then attempts to apply this "complexity" principle here to conclude that interviewing techniques about identity theft and tax fraud are materially more complex than those relevant to consumer financial protection. This distinction is not supported by logic, evidence, or authority.

And of course, Plaintiff makes no effort at all to distinguish the persuasive holding of another judge of this Court in *Frank II*, which rejected the very arguments Plaintiff makes here. 327 F. Supp. 3d 179. All of Plaintiff's cursory attempts to distinguish authorities cited by the Bureau are unavailing. The portions of the requested transcript pages reflecting Bureau questioning techniques designed to elicit specific information are law enforcement techniques and procedures protected from disclosure by Exemption 7(E).

### B. Disclosure of Records Reflecting Bureau Techniques and Methods Can Reasonably be Expected to Increase the Risk of Circumvention of the Law

As the Bureau explained in its opening memorandum, supported by the declaration of a senior Bureau official, the release of the portions of these records that reflect Bureau law enforcement techniques and methods could reasonably be expected to increase the risk of circumvention of the law. *See* Def.'s Mem. at 22-24, Morris Decl. ¶¶ 38-42. Plaintiff has not addressed this argument at all, and the Court may therefore regard it as conceded for purposes of the Bureau's motion for summary judgment and Plaintiff's cross motion. *Lewis*, 2011 WL 321711 at 1.

**CONCLUSION**

For these reasons, all withheld investigational hearing transcript pages are exempt from disclosure under Exemption 7(A); the portions potentially identifying any witness or other individual, as well as other private, personal information, are protected on personal privacy grounds under Exemptions 6 and 7(C); and the portions reflecting Bureau law enforcement techniques and procedures are exempt from disclosure under Exemption 7(E).  Therefore, the Bureau's motion for summary judgment should be granted and Plaintiff's cross-motion should be denied.

Respectfully submitted,

JESSIE K. LIU, DC Bar #472845
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


By:_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FRANK LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 19-1197 (APM) |
| v. | ) | |
| | ) | |
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF
MATERIAL FACTS AS
<u>TO WHICH THERE IS NO GENUINE ISSUE</u>**

Pursuant to Local Rule 7(h), Defendant Consumer Financial Protection Bureau ("Bureau") provides the following response to Plaintiff's statement of material facts as to which there is no genuine dispute.

18. Defendant has not legally justified its withholding of the interview transcripts in question pursuant to any FOIA exemption. Plaintiff is entitled to summary judgment declaring unlawful Defendant's withholding of the transcripts, for the reasons set forth in the Memorandum of Points and Authorities being filed simultaneously herewith.

**Disputed**. This statement is only conclusions of law and does not contain any statement of fact. However, Defendant disputes that it is not legally justified in withholding all of the requested records under Freedom of Information Act ("FOIA") Exemption 7(A) for the reasons set forth in Defendant's opening memorandum filed October 3, 2019 and Defendant's reply memorandum filed simultaneously herewith. *See also* Declaration of Deborah Morris ("Morris Decl."), ECF No. 11-1, ¶¶ 5-28.

Defendant also disputes that it is not legally justified in withholding portions of the

requested records under FOIA Exemptions 6, 7(C) and 7(E) for the reasons set forth in Defendant's opening memorandum filed October 3, 2019 and Defendant's reply memorandum filed simultaneously herewith.  *See* Morris Decl., ¶¶ 5-20, 29-42.

        Respectfully submitted,

        JESSIE K. LIU, DC Bar #472845
        United States Attorney

        DANIEL F. VAN HORN, DC Bar #924092
        Chief, Civil Division

By:_____/s/
        W. MARK NEBEKER, DC Bar #396739
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, DC  20530
        (202) 252-2536
        mark.nebeker@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendant's Combined Reply In Support Of Its Motion For Summary Judgment And Opposition to Plaintiff's Cross-Motion for Summary Judgment and the ccompanying Defendant's Response To Plaintiff's Statement of Material Facts and a proposed order, has been made through the Court's electronic transmission facilities on this 30th day of December, 2019.

/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov