**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Case No. 19-cv-01197 (APM)** |
| | ) |
| CONSUMER FINANCIAL PROTECTION | ) |
| BUREAU, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Frank LLP brings this action against the Consumer Financial Protection Bureau ("CFPB" or "Bureau") pursuant to the Freedom of Information Act ("FOIA") to challenge the agency's response to Plaintiff's 2018 FOIA request. The request asked for certain investigational transcripts, compiled by CFPB in advance of its civil enforcement action against the National Collegiate Master Loan Trust ("NCSLT") and its administrative enforcement action against Transworld Systems, Inc. ("Transworld"), a national debt-collection coordinator. After identifying 557 responsive pages, CFPB denied the request in full, and this action ensued. Before the court are the parties' cross-motions for summary judgment. Plaintiff alleges that CFPB improperly withheld the transcripts and failed to conduct an appropriate segregability analysis as required by FOIA. CFPB, on the other hand, contends that the responsive documents were properly withheld in full under Exemption 7(A), and that portions of the transcripts are also exempt from disclosure under Exemptions 6, 7(C), and 7(E).

The court concludes that CFPB has appropriately withheld all transcripts under Exemption 7(A).  Portions of the transcripts are also protected under Exemptions 7(C) and (E).  Lastly, the court finds that none of the withheld information was reasonably segregable.  Therefore, and for the reasons stated in greater detail below, the court grants CFPB's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff is a law firm that represents a class of consumers in two consolidated civil actions against NCSLT, Transworld, and a debt-collection law firm, Forster & Garbus LLP.  Pl.'s Compl., ECF No. 1 [hereinafter Pl.'s Compl.], ¶ 5.  The plaintiffs in those actions allege that, with the assistance of Forster & Garbus and other debt-collection law firms, NCSLT used false affidavits signed by Transworld employees to file unlawful student loan debt-collection lawsuits.  Compl., ¶¶ 1, 12, 15, 16, *Bifulco v. Nat'l Collegiate Student Loan Tr. 2004-2*, No. 1:18-cv-07692-PGG (S.D.N.Y. Aug. 28, 2018), ECF No. 1; Compl., ¶¶ 1, 12, 15, 16,  *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 1:18-cv-01781-PGG (S.D.N.Y. Feb. 27, 2018), ECF No. 1.  The parties in those actions are currently proceeding with discovery.  Pl.'s Compl. ¶ 10.

The claims in *Bifulco* and *Michelo*—that Transworld and NCSLT engaged in illegal debt-collection practices for several years—mirror the allegations in two separate actions filed by CFPB: one administrative enforcement action against Transworld, and one civil enforcement action against NCSLT in the District of Delaware.  *Transworld Sys.*, Admin. Proc. No. 2017-CFPB-0018 (*Transworld*) (Consumer Fin. Prot. Bureau Sept. 18, 2017)[1]; *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.* (*NCSLT*), No. 1:17-cv-01323 (D. Del. May

---

[1] Case Docket, *Transworld* (Sept. 18, 2017), *available at* https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/transworld-systems-inc/.

31, 2020).  CFPB settled the *Transworld* action via an administrative consent order.  Decl. of Deborah Morris, ECF No. 11-1 [hereinafter Morris Decl.], ¶ 24.  The order confirmed that Transworld hired law firms to file student loan actions on behalf of NCSLT, many based on false affidavits.  *Id.*  Meanwhile, in the *NCSLT* action, seven parties—including Transworld— intervened to challenge a proposed consent judgment.  *Id.* ¶¶ 23, 25.  The district court rejected the proposed judgment on May 31, 2020, *see* Mem. Op., ECF No. 272, *NCSLT* (May 31, 2020), and is currently considering CFPB's Request for Default Judgment, ECF No. 295, *NCSLT* (July 2, 2020), as well as Transworld's Motion to Dismiss, ECF No. 242, *NCSLT* (Mar. 19, 2020).

In addition, CFPB initiated a separate enforcement action in the Eastern District of New York against the Forster & Garbus law firm for its role in prosecuting unlawful debt-collection lawsuits.  *Bureau of Consumer Fin. Prot. v. Forster & Garbus, LLP* (*Forster & Garbus*), No. 2:19-cv-2928 (E.D.N.Y.)  The district court stayed that matter for several months pending a decision by the Supreme Court in *Selia Law LLC v. Consumer Financial Protection Bureau*.  *See* Order Extending Deadline for Parties to Seek Leave to Restore Case, ECF No. 28, *Forster & Garbus* (June 29, 2020).  Following the Supreme Court's decision in late June 2020, *Selia Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the Bureau moved to reopen the case.  Letter Mot. to Reopen Case, ECF No. 29, *Forster & Garbus* (July 6, 2020).  That request is pending.

In summary, the cases that bear on this opinion are the *Transworld* administrative action, the *NCSLT* action, the *Forster & Garbus* lawsuit, and Plaintiff's two class actions.

###    B.    Procedural Background

Plaintiff filed this FOIA request in September 2018.  The request asked CFPB to produce documents pertaining to (1) the Bureau's enforcement action resulting in the *Transworld* consent order, and (2) the Bureau's enforcement action against NCSLT.  Compl. ¶ 15.  The request

included but was not limited to the investigational-hearing testimony—akin to depositions—of nine Transworld employees who had signed or notarized state-court affidavits against the plaintiffs in the *Bifulco* and *Michelo* cases. *Id.* ¶ 16. Plaintiff later agreed to narrow its FOIA request to only the investigation-hearing transcripts of the nine affiants. *Id.* ¶ 17. The Bureau identified 557 pages of responsive transcript pages, but it declined to disclose any of them, citing Exemptions 4, 7(A), and 7(E). Morris Decl. ¶ 11; *id.*, Ex. B [PDF pp. 18–20].

Plaintiff then filed an administrative appeal. There, the Bureau concluded that the documents were exempt from disclosure under Exemptions 7(A) and 7(E). *Id.*, Ex. D [PDF p. 40]. The Bureau explained that disclosure could be reasonably expected to interfere with the agency's active litigation and would reveal techniques the agency uses to uncover specific facts for those investigations. *Id.*

Plaintiff filed this action on September 19, 2018. Pl.'s Compl. ¶ 15. Both parties subsequently filed motions for summary judgment. CFPB maintains that it properly withheld the transcripts in full under Exemption 7(A). Def.'s Mot. for Summ. J., ECF No. 11 [hereinafter Def.'s Mot.], at 8. It also invokes Exemptions 7(C) and 6 on the grounds that disclosing certain transcript portions would constitute an unwarranted invasion of personal privacy, and additionally maintains that certain transcript portions are protected by Exemption 7(E). *Id.* Plaintiff counters that the exemptions do not apply, and that even if some exemptions do apply, CFPB failed to conduct an adequate segregability review of the 557 pages. Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Cross-Mot. for Summ. J., ECF No. 13 [hereinafter Pl.'s Mot.], at 2–3, 18; Pl.'s Compl. at 8.

### III.   LEGAL STANDARD

FOIA's purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA "mandates

disclosure of government records unless the requested information falls within one of the nine enumerated exemptions." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Because of FOIA's "goal of broad disclosure," courts are to give the exemptions "a narrow compass." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW I*), 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011)). However, courts must not fail to give the exemptions "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). FOIA expressly "places the burden of justifying nondisclosure on the agency seeking to withhold information." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see* 5 U.S.C § 552(a)(4)(B).

The "vast majority" of FOIA actions are resolved on summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). When presented with a motion for summary judgment in a FOIA action, the district court conducts a *de novo* review, "which requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA.'" *Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 13 F. Supp. 3d 92, 101 (D.D.C. 2014) (alterations in original) (quoting *Multi Ag. Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008)).

Thus, the court may grant summary judgment only where an agency can "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from FOIA's inspection requirements." *Cudzich v. U.S. Immigration & Naturalization Serv.*, 886 F. Supp. 101, 104 (D.D.C. 1995) (cleaned up) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183 (D.C. Cir. 1973)). The agency meets this burden by providing "a relatively detailed justification, specifically identifying the reasons why a particular

5

exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data*, 566 F.2d at 251.   Motions for summary judgment may be granted based on agency affidavits and declarations if they "contain reasonable specificity of detail . . . and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Frank LLP v. Consumer Fin. Prot. Bureau* (*Frank II*), 327 F. Supp. 3d 179, 182 (D.D.C. 2018) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)).   The agency does not meet its burden, however, if it provides mere "conclusory and generalized allegations of exemptions." *Bloche v. Dep't of Def.,* 414 F. Supp. 3d 6, 25 (D.D.C. 2019) (cleaned up).

## IV.   DISCUSSION

CFPB invokes Exemptions 7(A), 7(C), 6, and 7(E) as the basis for its withholdings.  Thus, the transcripts or relevant portions are properly withheld if they: (1) "could reasonably be expected to interfere with enforcement proceedings" under Exemption 7(A); (2) could constitute "a clearly unwarranted invasion of personal privacy" under Exemption 6, or could "reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C); or (3) "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of law" under Exemption 7(E).  5 U.S.C § 552(b).   Even when an exemption applies, however, an agency must disclose "any reasonably segregable portion of" the withheld records.  *Id.*

### A.   Exemption 7(A)

Plaintiff first challenges the Bureau's claim that Exemption 7(A) justifies withholding the transcripts entirely.  *See* Pls.' Mot. at 9–10.  Exemption 7(A) protects documents "compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement

proceedings." 5 U.S.C § 552(b)(7)(A). To qualify for protection, an agency must demonstrate that (1) "a law enforcement proceeding is pending or prospective," and (2) "some distinct harm is likely to result if the record or information requested is disclosed." *Cudzich*, 886 F. Supp. at 106; *see Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). Plaintiff challenges both elements.

### 1.   *CFPB-initiated legal proceedings*

Exemption 7(A) applies when law enforcement proceedings are "pending or contemplated." *Mapother*, 3 F.3d at 1541 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980)). This includes proceedings that are active, cases in which the agency "must be prepared to respond to a third party's challenge," or proceedings that are "reasonably anticipated." *Id.* at 1540–41; *CREW I*, 746 F.3d at 1097. Disclosure, on the other hand, is appropriate when the documents relate to parts of the enforcement proceedings that have already concluded. *CREW I*, 746 F.3d at 1097.

Plaintiff challenges the "pending or contemplated" nature of the various actions brought by CFPB. It contends that the *Transworld* action has been resolved; the *NCSLT* action though active is limited to contractual matters, in which case releasing the transcripts has no impact on those proceedings; and the *Forster & Garbus* action is either "closed" or "on the cusp of being resolved." Pl.'s Mot. at 11. Plaintiff is correct that the *Transworld* action is resolved, but it misstates the present posture of other two proceedings.

The *NCSLT* matter is in active litigation. Pending in that case is CFPB's Application for Entry of Default, as well as Transworld's Motion to Dismiss for lack of subject-matter jurisdiction. *See* Pl.'s Appl. for Entry of Default, ECF No. 295, *NCSLT* (July 2, 2020); Opening Br. in Supp. of Intervenor Transworld Inc.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No.

243, *NCSLT* (Mar. 19, 2020); Intervenors' Mot. to Dismiss, ECF No. 301, *NCSLT* (Jul. 10, 2020). Depending on how the court disposes of these motions, the *NCSLT* action may proceed to an adjudication of the merits of NCSLT's alleged Fair Debt Collection Practices Act violations. *NCSLT* thus does not solely involve "contractual issues," as Plaintiff claims, but may involve discovery and a trial on the merits.  Pl.'s Mot. at 10.

As for *Forster & Garbus*, following the Supreme Court's decision in *Selia Law LLC*, the parties are currently debating when to re-open the case.  *See* Order Extending Deadline for Parties to Seek Leave to Restore Case, ECF No. 28, *Forster & Garbus* (June 29, 2020).  Thus, contrary to Plaintiff's characterization, that case is neither "closed" nor on the "cusp of being resolved." Moreover, the fact that the *Forster & Garbus* complaint does not mention Transworld's "affidavit-execution procedure" is of no moment.  Pl.'s Mot. at 11.  The *Forster & Garbus* complaint explicitly mentions NCSLT, Compl. ¶ 33, ECF No. 1, *Forster & Garbus* (May 17, 2019), and, given the intertwined relationship between NCSLT, Transworld, and Forster & Garbus, the transcripts may be implicated in future discovery.

CFPB therefore has identified two "concrete prospective law enforcement proceeding[s]" to which the investigative transcripts relate.  *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008) (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)).

### 2.    *Likelihood of Interference with Law Enforcement Actions*

Next, CFPB must demonstrate that release of the transcripts is reasonably expected to interfere with its pending law enforcement proceedings.  An agency meets this burden by showing "how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding."  *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982).  Interference covers a wide range of consequences, including prematurely revealing

the government's "evidence and strategies, or the nature, scope, direction, and focus of its investigations," *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000); *see also Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988), and allowing law enforcement subjects to establish defenses, create fraudulent alibis, destroy evidence or intimidate witnesses, *North v. Walsh*, 881 F.2d 1088, 1097– 98 (D.C. Cir. 1989). An agency may justify Exemption 7(A) categorically so long as "definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed" exemption is "properly applied." *CREW I,* 746 F.3d at 1088 (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)). However, categorical justification is available only when "the range of circumstances included in the category characteristically support an inference that the statutory requirements for exemption are satisfied." *Id.* at 1089 (cleaned up).

Categorical withholding of Exemption 7(A) material finds its roots in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978). There, the Supreme Court held that prehearing witness statements may be withheld categorically. *Id*. at 241. The Court reasoned that disclosing witness statements would involve "the kind of harm that Congress believed would constitute an 'interference' with [agency] enforcement proceedings: that of giving a party litigant earlier and greater access to the [agency's] case than he would otherwise have." *Id.* Since *Robbins*, the D.C. Circuit has allowed agencies to categorically withhold witness statements. *See, e.g.*, *Swan* 96 F.3d at 499, *Alyeska* 856 F.2d at 312. In *Swan*, for instance, the D.C. Circuit allowed categorical withholding of records that contained statements made by the plaintiffs' attorney to the agency. *Swan*, 96 F.3d at 498–99. Even though "some of" the attorney's statements may have been known by the plaintiffs, the records still might have "reveal[ed] much about the focus and scope of the [agency's] investigation, and [were] thus precisely the sort of information Exemption 7(A) allows

an agency to keep secret." *Id.* at 500.   In *Alyeska*, the court upheld categorical withholding of documents—including an interview transcript—because releasing the documents could have resulted in disclosure of the "specific knowledge of the particular activities being investigated and the direction being pursued" by the agency.   856 F.2d at 312, 314.   A categorical approach is permitted even if the FOIA requester is not an active litigant in an enforcement proceeding, as courts "must evaluate the risk of disclosing records to some particular FOIA requester . . . in terms of what anyone else might do" with the requested information.   *Swan*, 96 F.3d at 500.

CFPB in this case categorically withheld the investigative transcripts, claiming that the investigative transcripts are a type of witness statement.   Def.'s Mot at 13.   In support of its categorical withholding, Deborah Morris—a Deputy Director of CFPB's Office of Enforcement— states that disclosing the responsive documents creates several risks, including witness intimidation, identification of evidence likely to be relied upon by the government, and premature disclosure of government strategy.   Morris Decl. ¶¶ 1, 27.   She also identifies a list of current private actions between various NCSLT agents, and asserts that disclosing the documents could invite "disruptive collateral litigation" that "risks prematurely putting the Bureau's enforcement cases at issue through collateral litigation in a federal court or a different forum."   *Id.* ¶ 28.

Plaintiff responds that the transcripts are so widely publicized that their release could not interfere with any law enforcement proceedings.   Pl.'s Mot. at 12.   In support of its argument, Plaintiff cites CFPB orders that identify two of the nine affiants named in its original FOIA request. *Id*. at 11–12.   Plaintiff also claims that, due to the close-knit contractual relationship between NCSLT, Transworld and other entities, it is presumed that the multiple parties know about the existence and substance of the affiants' testimony.   *Id*. at 13.   Finally, Plaintiff asserts that after the Bureau issued the *Transworld* consent order, it was clear that the evidence detailing the false

affidavit scheme came from the affiants.  *Id.*  As nothing would come as a surprise to any of the relevant parties, Plaintiff argues, the transcripts should be released.  *Id.*

Plaintiff's contentions are unconvincing.  Nothing about the nature of the investigation transcripts or the circumstances of disclosure warrants deviating from established precedent recognizing such statements as protected under Exemption 7(A).  *See Swan*, 96 F.3d at 499; *Alyeska*, 856 F.2d at 312.  The withheld investigational transcripts are witness statements in the traditional sense.  CFPB prepared them as part of an investigation and in anticipation of possible law enforcement actions, which CFPB ultimately filed.  Morris Decl. ¶¶ 21, 23.  The Bureau explains that, among other consequences, releasing the transcripts would reveal "the direction of the government so far" and "the activity under continuing investigation during the litigation."  *Id.* ¶ 27.  Implicit in CFPB's arguments is the concern that release of the transcripts would reveal the "focus and scope" of the proceedings and result in premature disclosures.  Those are legitimate, protectable interests under Exemption 7(A).  *See Swan*, 96 F.3d at 499; *Alyeska*, 856 F.2d at 311. It matters not that Plaintiff knows *some* of the information in the investigational interviews.  *See Swan*, 96 F.3d at 500.  Releasing the transcripts would still expose the scope and focus of the Bureau's investigation in greater detail and do so prematurely, and thus CFPB rightfully invoked Exemption 7(A).

Nor has Plaintiff supplied specific evidence to support its broad assertion that "nothing in the transcripts will come as a surprise to anyone familiar with the CFPB investigations at issue here."  Pl.'s Mot. at 13.  Plaintiff is correct in that there are a limited number of potential affiants who might have been interviewed by the Bureau, and two of those affiants were publicly identified

11

during the Bureau's debt-collection investigations.[2]  Thus, it may be reasonable to assume that some information about the debt-collection schemes came from *some* Transworld affiants.  For example, pages six through eleven of the *Transworld* consent order—which address the false affidavit scheme[3]—may have come, at least in part, from the interviews.  However, Plaintiff offers no concrete evidence to establish that fact, let alone its broader proposition that "nothing will come as a surprise."  Pl.'s Mot. at 13.  A similar deficiency arises with Plaintiff's claim about the potential witness identities.  Although CFPB identified two Transworld employees that may have testified, the public record confirms only that one of those employees in fact testified before CFPB.[4]  Whether any of the other eight employees named in Plaintiff's request testified is unclear, despite Plaintiff's speculation: the identities of the individual(s) who testified before CFPB remains confidential.  *See* Morris Decl. ¶¶ 18, 29.  CFPB therefore has met its burden for categorically invoking Exemption 7(A).

### B.    Exemptions 6 and 7(C)

Although the court upholds CFPB's categorical withholding of all transcripts under Exemption 7(A), in the interest of completeness, the court addresses the agency's other asserted exemptions.  CFPB contends that the names, financial information and other identifying

---

[2] *See* Decision & Order on Francesca Giampiccolo's Pet. to Set Aside Civil Investigative Dem., *In Re. Francesca Giampiccolo*, No. 2015-CFPB-Giampiccolo-0001 (Consumer Fin. Prot. Bureau Aug. 1, 2015) ("Giampiccolo Order"), *available at* https://files.consumerfinance.gov/f/201508_cfpb_decision-and-order-on-francesca-giamiccolo-petition-to-set-aside-civil-investigative-demand.pdf; Decision & Order on Pet. by Transworld Systems Inc. to Appear at the Oral Exam. Of Chandra Alphabet, *In re Transworld Sys. Inc*., No. 2015-Misc-Transworld Systems Inc-0001 (Consumer Fin. Prot. Bureau May 29, 2015) ("Alphabet Order"), *available at* https://files.consumerfinance.gov/f/201506_cfpb_decision-and-order-on-petition-by-transworld-systems-inc-to-appear-at-examination-of-chandra-alphabet.pdf.
[3] Consent Order, *Transworld* (Sept. 18, 2017), *available at* https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf.
[4] The conclusion that the public record only confirms the identity of one affiant stems from the nature of the released documents.  One document—the Decision and Order on Petition by Transworld Systems Inc. to Appear at the Oral Examination of Chandra Alphabet—implicitly confirms that there was an oral examination.  Alphabet Order at 1.  The other document—the Decision and Order on Francesca Giampiccolo's Petition to Set Aside Civil Investigative Demand—does not confirm whether Ms. Giampiccolo in fact testified after having her petition rejected.  *See generally* Giampiccolo Order.

information of the witness(es) are properly withheld pursuant to Exemptions 6 and 7(C). Exemption 6 protects documents such as medical or personnel files, for which disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such" records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).  When an agency claims that documents are exempt under both provisions, a court begins its analysis with Exemption 7(C) because "it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW II*), 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *CREW I*, 746 F.3d at 1091 n.2).

The Exemption 7(C) analysis requires "balanc[ing] the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect."  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989)).  As with Exemption 7(A), categorical decisions on withholding documents pursuant to Exemption 7(C) "may be appropriate and individual circumstances and individualized circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction."  *Id.*

        *1.    Privacy Interests*

The first question is "whether there is any privacy interest at stake" when releasing the investigational transcript portions withheld under Exemption 7(C).  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011).  Individuals "have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation."  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir.

1995).  That interest "extends to third parties who may be mentioned in investigatory files, as well as witnesses and informants who provided information during the course of an investigation."  *Id*.

The D.C. Circuit held in *SafeCard Services v. SEC* that private identifying information is categorically exempt under Exemption 7(C), unless that information is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity."  926 F.2d 1197, 1206 (D.C. Cir. 1991).  However, "individuals who have already been publicly identified . . . as having been . . . otherwise implicated" in an agency investigation hold a "diminished privacy interest," *CREW II*, 854 F.3d at 682, and therefore the categorical rule does not apply, *District of Columbia v. U.S. Immigration & Customs Enf't*, No. 18-CV-2410 (TSC), 2020 WL 2527207, at *3 (D.D.C. May 18, 2020).

The individual(s) who testified in front of CFPB are "witnesses."  *See* Morris Decl. at ¶ 23. They have an "obvious," strong privacy interest in the non-disclosure of their names and identifying information.  *Nation Magazine*, 71 F.3d at 894.  Furthermore, most of the witnesses' identifying information is not public.  Morris Decl. ¶ 18.  Accordingly, the information about the nonpublic witnesses is "presumptively exempt from disclosure under the *SafeCard* rule," *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003), absent "probative . . . allegations of official misconduct," *Aguirre v. U.S. Sec. & Exch. Comm'n*, 551 F. Supp. 2d 33, 56 (D.D.C. 2008).[5]

Plaintiff argues that since the investigation is well-known, and there are only a handful of Transworld employees who sign affidavits, the witnesses' identities are readily apparent and thus

---

[5] Since public records confirm that one of the affiants identified by Plaintiff did in fact testify before the CFPB in the *Transworld* proceeding, that individual's information is not entitled to categorical withholding under *SafeCard*. *CREW II*, 854 F.3d at 682.  However, she retains a "second, distinct privacy interest in the *contents* of the investigative files." *CREW I*, 746 F.3d at 1092.  Because the transcripts may contain her "medical, financial, employment and other personal" information, Morris Decl. ¶ 30, the affiant retains a more than a *de minimis*, and therefore substantial, privacy interest in the contents of the documents, *see Multi Ag Media LLC*, 515 F.3d at 1229–30.

releasing the transcripts will not invade the witnesses' personal privacy.  Pl.'s Mot. at 13, 15–16.

Plaintiff also claims that due to the transcripts' publicity via the facts in the *Transworld* consent

order, the affiants have a diminished privacy interest.  *Id.* at 13, 15.  These arguments, however,

run into the same wall as Plaintiff's Exemption 7(A) argument.  A short list of nine potential

witnesses is not equivalent to public disclosure.  Although Plaintiff infers that the nine Transworld

employees named in its FOIA request participated in the Bureau's investigation, the public record

confirms Plaintiff's hypothesis for only one of those affiants.  Informed speculation is not the same

as official disclosure.  *See Aleyska*, 856 F.2d at 314.  Accordingly, the court rejects Plaintiff's

characterization of the affiants having a "diminished privacy interest."

> ## 2.    *Public Interest*

Under *SafeCard*'s categorical rule, the sole public interest that would warrant overcoming

a person's privacy interests is that disclosure "is necessary in order to confirm or refute compelling

evidence that the agency is engaged in illegal activity."  926 F.2d at 1206.  Plaintiff, however,

offers no "compelling evidence" of agency misconduct.  *Id.* at 1205.  At most, it asserts that

disclosure will help the public "understand whether the CFPB 'pulled its punches' in one of its

highest-profile investigations in recent years," Pl.'s Mot. at 16 (quoting *CREW II*, 854 F.3d at 683),

observing that "consumers subjected to the very false-affidavit violations identified by the CFPB

against Transworld, have failed to receive any compensation or equitable relief," *id.*; *see also* Decl.

of Gregory A. Frank, ECF No. 14-2, ¶ 3.  Although records that potentially show an agency "pulled

its punches" are no doubt of some public interest, *see CREW I*, 746 F.3d at 1093, such an assertion

does not rise to the level of "compelling evidence" of "illegal activity" required by *SafeCard*.

CFPB therefore properly invoked Exemption 7(C) categorically, except as to the one publicly

identified witness, *see supra* p. 12, note 4, which the court discusses in the next section.

3.      *Balancing*

Because the Bureau publicly released the name of one witness, information pertaining to her must be considered under the traditional balancing test.  *See CREW II*, 854 F.3d at 682.  As previously discussed, *see supra* p. 14, note 5, disclosing her identifying information would implicate a substantial privacy interest.  On the other side of the scale, Plaintiff does not explain how disclosure of the witness's information would advance the claimed public interest.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (holding that, "[w]here the privacy concerns addressed by Exemption 7(C) are present," the plaintiff must show that the requested information "is likely to advance" a "significant" public interest).  Accordingly, CFPB appropriately withheld portions of the requested documents under Exemption 7(C), and the court need not consider the Exemption 6 argument.

C.      **Exemption 7(E)**

Finally, the Bureau invokes Exemption 7(E) for portions of the transcripts containing "techniques and procedures for law enforcement."  Def.'s Mot. at 18.  Exemption 7(E) protects records compiled for law enforcement purposes, "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7); *see also Frank II*, 327 F. Supp. 3d at 184–85; *Shapiro v. U.S. Dep't of Justice,* 239 F. Supp. 3d 100, 112 (D.D.C. 2017).

1.      *Techniques and Procedures*

Exemption 7(E) normally protects "investigative techniques and procedures generally unknown to the public."  *Albuquerque Publ'g Co. v. U.S. Dep't of Justice,* 726 F. Supp. 851, 857

16

(D.D.C. 1989).  However, "*even commonly known* procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Judicial Watch, Inc. v. FBI*, No. 00-745 (TFH), 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (emphasis added).  Courts in this district recognize that specific interviewing techniques are protected under the exemption.  *Allen v. Fed. Bureau of Prisons,* No. 16-cv-0708, 2019 WL 498804, at *7 (D.D.C. Feb. 8, 2019); *Frank II*, 327 F. Supp. 3d at 183–84.

The court does not write on a clean slate regarding CFPB's invocation of Exemption 7(E). Plaintiff previously brought two FOIA actions against CFPB in this District.  The first, from 2016, sought records supporting the findings in an administrative consent order against a different organization engaged in a similar false affidavit debt-collection scheme.  There, the court found that the agency had properly withheld records under FOIA Exemption 7(E).  *Frank LLP v. Consumer Fin. Prot. Bureau* (*Frank I*), 288 F. Supp. 3d 46, 54 (D.D.C. 2017).  The second action involved a request, much like in this case, for investigational hearing transcripts related to false-affidavit debt-collection schemes.  The Bureau produced several documents, including partially redacted transcripts from its interviews.  The court upheld the redactions, holding that CFPB's questioning techniques for debt-collection scheme lawsuits constituted "techniques and procedures" under Exemption 7(E).  *Frank II*, 327 F. Supp. 3d at 183–34.  The court explained that the redacted documents contained "the specific questions asked by Bureau investigators of two . . . affiants, including the specific information and types of information sought, the manner of questioning [and] sequencing of questioning," among other details.  *Id.* at 183.

There is no material difference between the issue decided in *Frank II* and the issue here. CFPB in this case redacted certain portions of the investigational transcripts that contain specific information about how the Bureau conducts official investigations, including the sequence and

17

manner of questioning.  Morris Decl. ¶¶ 39–42.  Although it is well-known that CFPB engages in interviews when investigating debt-collection violations, the agency's strategy and specific questions are confidential, and therefore not public or well-known.  *Id.* ¶ 36.  Thus, the investigation transcripts contain protected "techniques and procedures" for the purpose of Exemption 7(E).

Plaintiff argues that the Bureau's interview techniques are "obvious," and therefore not techniques and procedures entitled to protection under Exemption 7(E).  Pl.'s Mot. at 17–18 n.18.  Plaintiff advanced a near-identical argument in *Frank II*; it is no more persuasive here.  *See* 327 F. Supp. 3d at 184–85.  Although general interviewing methods might be "obvious" in some respects, Pl.'s Mot. at 17 n.18, the *specific* interview methods used to investigate Consumer Financial Protection Act and Fair Debt Collection Practices Act violations are confidential, Morris Decl. ¶¶ 36, 39.  This court therefore joins *Frank II* in finding that CFPB's interview techniques qualify as protected techniques and procedures under Exemption 7(E).

### 2. *Risk of Circumvention of Law*

The circumvention-of-law requirement sets a "relatively low bar."  *Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352, 363 (D.D.C. 2015).  An agency must only show "a chance of a reasonably expected risk" to qualify for the exemption.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *Jett*, 139 F. Supp. 3d at 362.  In other words, "[E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Barouch v. U.S. Dep't of Justice*, 87 F. Supp. 3d 10, 29 (D.D.C. 2015) (alterations in original) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

CFPB reports that the transcripts contain specific questions and questioning sequences that would reveal which facts are particularly important for prosecuting unlawful debt collection practices. Morris Decl. ¶ 41. Release of this information would allow entities engaging in similar conduct to "coach witnesses in these and similar cases on how to avoid providing incriminating information." *Id.* Although revealing the transcripts may not provide a "'how to' manual for law-breakers," a detailed understanding of the way the Bureau conducts investigational interviews in false-affidavit debt collection schemes "could encourage decisions to violate the law or evade punishment." *Mayer Brown LLP*, 562 F.3d at 1193. It is logical to infer that releasing CFPB's investigational process, which could be revealed in part through the transcripts, would increase the risk that a violator would alter his or her behavior to avoid prosecution. Accordingly, CFPB satisfies Exemption 7(E)'s "low bar" for the relevant transcript pages, and properly invoked Exemption 7(E).

### D.    Segregability

Finally, the court must consider whether CFPB complied with FOIA's mandate that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C § 552(b). When claiming a generic exclusion "dependent upon the category of records rather than the subject matter which each individual record contains," an agency need not provide a document-by-document segregability analysis so long as it supplies an affidavit that is "sufficiently detailed to establish that the document or group of documents in question actually falls into the exempted category." *Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 152 (D.C. Cir. 1986); *see also Robbins*, 437 U.S. at 224 (stating that although FOIA requires that agencies disclose "segregable portions of records," the Act does not "necessarily contemplate[] that the [agency] must specifically

demonstrate in each case that disclosure of the particular witness' statement would interfere with a pending enforcement proceeding").

In this case, CFPB has established, based on the Morris Declaration, that the investigational transcripts all fit into the category of protected witness statements.  Accordingly, although the Bureau did not address in its declaration whether any of the withheld information could be segregated, *see generally* Morris Decl., the court independently concludes that there are no reasonably segregable portions of responsive records, *see Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) (finding that the "scope of the [agency's] categorical withholdings" enabled the court to conclude that all reasonably segregable information had been released, notwithstanding the agency's failure to address segregability in its declaration); *see also Robbins, Geller, Rudman & Dowd, LLP v. U. S. Sec. & Exch. Comm'n*, No. 3:14-CV-2197, 2016 WL 950995, at *9 (M.D. Tenn. Mar. 12, 2016) (holding that "it is permissible for the government to assert that an entire *category* of documents is exempt from disclosure and therefore not reasonably segregable").

## V.    CONCLUSION

For the reasons discussed in this Memorandum Opinion, the court grants the CFPB's Motion for Summary Judgment, ECF No. 11, and denies Plaintiff's Cross-Motion for Summary Judgment, ECF No. 14.  The court also grants the CFPB's Motion for Leave to File an Under Seal, *Ex Parte* and *In Camera* Declaration, ECF No. 12, for the reasons set forth in that motion.  A separate Order accompanies this Memorandum Opinion.

Dated:  August 5, 2020

Amit P. Mehta
United States District Court Judge